ALASKA STATE HOUSING AUTHORITY, a Public Corporation Authority of the State of Alaska, Appellant,

v.

BLOMFIELD, DUDLEY & EKNESS, a partnership consisting of Charles Blomfield, Hawley Dudley and Chalmers Ekness, Appellees.

No. 6751.

Supreme Court of Alaska.

April 1, 1983.

Allen McGrath, Joan Travostino, Mary Poteet, Graham & James, Anchorage, for appellant.

Ben Esch, Dickson, Evans & Esch, Anchorage, for appellee Charles Blomfield.

Before BURKE, C.J., RABINOWTIZ, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.*

OPINION

COMPTON, Justice.

This is an appeal taken by the Alaska State Housing Authority ("ASHA") from a summary judgment granted by the superior court in favor of Charles Blomfield. ASHA

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11, of the Constitution of Alaska.

filed suit against Blomfield, Hawley Dudley and Chalmers Ekness, who had allegedly entered into a partnership or joint venture with each other to provide architectural and engineering services to ASHA. ASHA contends that as a result of the negligence or breach of contract by Dudley and Ekness in performing their portion of the work, ASHA has sustained damages in excess of $1.25 million. The superior court ruled that as a matter of law, Blomfield could not be liable to ASHA for these damages. ASHA contends that the court erred in granting summary judgment for Blomfield because there are genuine issues of material fact as to whether Blomfield was a partner or joint venturer with Dudley and Ekness, by intent or estoppel, at the time of their alleged negligence or breach of contract. For the reasons set forth below, we affirm the judgment of the superior court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1971, ASHA received funds from the United States Department of Housing and Urban Development ("HUD") to reconstruct a road leading to a public housing project in Bethel, Alaska, as well as to renovate some of the houses in the project. Dudley and Ekness, the partners of a Seattle architectural firm, were interested in the contract for the design and engineering of the road and renovations. According to Bobby Capps, the deputy director of ASHA at that time, ASHA specifically requested Dudley and Ekness to associate with Blomfield, an Anchorage architect and former employee of ASHA, because the state legislature, which funds ASHA, preferred that contracts be awarded to Alaskans or non-Alaskans who were in association with Alaskans.

The contract, which was for $100,000.00, was awarded to "Blomfield, Dudley & Ekness." Capps indicates that ASHA suggested the use of this name to emphasize Blomfield's—an Alaskan's—association with the Seattle firm. In a letter written before the contract was entered into, Ekness informed the Executive Director of ASHA that Blomfield would be "an Associate Architect." Ekness further informed the Executive Director that Blomfield's "portion of the work will be to inspect each of the houses and develop a work program for rehabilitating the houses. He estimates his work can be completed in two months from notice to proceed." Dudley and Ekness reserved for themselves the work relating to the road, which constituted the major portion of the contract. It is undisputed that Blomfield did not have anything to do with the road portion of the contract work.

Blomfield agreed with Dudley and Ekness that he would be paid $40.00 an hour for his services, up to a maximum of $10,000.00. He was in fact paid approximately $4,000.00 for 100 hours of work. This sum was not a part of the $100,000.00 awarded on the contract, but was a separate cost item billed to and paid by ASHA. Blomfield started his work in October 1971, before the contract was formally executed, so that the results of his work could be included in the contract. Blomfield broke his leg during the course of his work and subsequently withdrew from his association with Dudley and Ekness. He did, however, complete his report by March 1972, within two months of when the contract was executed.

ASHA and HUD decided that Dudley and Ekness did not have sufficient expertise to conduct the necessary soil testings or prepare the technical specifications for the construction of the road. Dudley and Ekness consequently arranged for Geolabs to perform this work. Sometime after April 1972 the road specifications were prepared. The contractor for the actual road construction, Walsh & Co., incurred additional expenses because of an ambiguity in the specifications. Walsh & Co. sued ASHA to recover these additional expenses and eventually obtained a judgment against ASHA.[1]

In the present lawsuit, ASHA seeks indemnity from Blomfield, Dudley and Ekness in excess of $1.25 million, incurred by ASHA as a result of Dudley's and Ekness's

1. *Alaska State Housing Authority v. Walsh &* *Co., Inc.,* 625 P.2d 831 (Alaska 1980).

alleged negligence or breach of contract with regard to the road specifications. Blomfield moved for summary judgment, contending that he never was a partner or joint venturer with Dudley and Ekness or, alternatively, that if he was, his involvement terminated before the alleged negligence and breach of contract. Blomfield's motion was supported by affidavits from various persons. ASHA opposed the motion and submitted affidavits of its own. The superior court ruled that ASHA indisputedly knew of Blomfield's limited participation in the contract. The court therefore granted summary judgment for Blomfield. Presumably, the court's ruling reflected its conclusion that there were no material issues of fact as to whether Blomfield was a partner or joint venturer with Dudley and Ekness, by intent or estoppel, at the time of the alleged negligence or breach of contract. ASHA contends on appeal that this conclusion is incorrect.

## II. DISCUSSION

In accordance with Alaska Civil Rule 56(c), a motion for summary judgment should only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." ASHA contends that there exist genuine issues of material fact as to whether Blomfield was a partner or joint venturer with Dudley and Ekness at the time of the alleged negligence or breach of contract. We disagree.

ASHA and Blomfield generally do not dispute the law applicable to this case. Alaska has adopted the Uniform Partnership Act (AS 32.05.010–.430). AS 32.05.010 states that a partnership is "an association of two or more persons to carry on as co-owners a business for profit." This court has defined a joint venture as " 'an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge.' "

*Northern Lights Motel, Inc. v. Sweaney,* 561 P.2d 1176, 1187 (Alaska 1977), *quoting State ex rel. McCrory v. Bland,* 197 S.W.2d 669, 672 (Mo.1946). Inasmuch as there is no evidence whatsoever that Blomfield associated with Dudley and Ekness for anything more than this particular contract with ASHA, the law of joint ventures should be applied.

### 1. *Withdrawal from Joint Venture*

Even if, as ASHA argues, there are material issues of fact as to whether Blomfield was initially a joint venturer with Dudley and Ekness, we conclude that there are no material issues of fact as to whether Blomfield withdrew from the supposed joint venture before the alleged negligence or breach of contract by Dudley and Ekness occurred. Blomfield broke his leg in Bethel in November 1971. At that time he specifically informed ASHA and Dudley and Ekness that he was withdrawing from the project. He performed ten more hours of follow-up work, which was concluded well before April 1972. Blomfield states that Dudley and Ekness then "unconditionally accepted [his] work as being complete and further agreed that [his] participation and role in the Bethel housing project was terminated."

Ekness supports Blomfield's assertion, stating that in late 1971 or early 1972, "Blomfield broke his leg and withdrew from his involvement in the Bethel project. Blomfield's withdrawal was accepted by ASHA and by Dudley & Ekness."

Capps, then deputy director of housing at ASHA, similarly states:

Mr. Blomfield broke his leg while in Bethel and elected to withdraw from his responsibilities on the Bethel housing rehabilitation project. Mr. Blomfield notified Dudley & Ekness and ASHA that he would no longer participate in the housing rehabilitation project. Mr. Blomfield's withdrawal of participation was accepted by both ASHA and by Dudley & Ekness. Mr. Blomfield never participated in any fashion in the road project, and his withdrawal as described above

terminated his relationship with ASHA for the Bethel project.

■ The parties cite Alaska's statute on partnerships, by analogy, for the law on one person leaving a joint venture. AS 32.05.-310(b) states:

A partner is discharged *from an existing liability* upon dissolution of the partnership by an agreement to that effect between himself, the partnership creditor and the person or partnership continuing the business. The agreement may be inferred from the course of dealing between the creditor who has knowledge of the dissolution and the person or partnership continuing the business. [Emphasis added.]

This law is not precisely applicable to this case because the evidence demonstrates that Blomfield terminated his role in the project, with the knowledge and consent of ASHA and Dudley and Ekness, before April 1, 1972. The road specifications, containing the ambiguity resulting in ASHA's losses, were not prepared until sometime after April 1972. Thus, Blomfield was not discharged from an existing liability, but instead was simply not a joint venturer with Dudley and Ekness at the time the alleged liability arose. It is clear that if Dudley, Ekness and ASHA were aware and approved of Blomfield's withdrawal from the project by March 1972, Blomfield cannot be held liable for any negligence or breach of contract that occurred after March 1972. *See 59th and Park Associates v. Inselbuch,* 68 A.D.2d 838, 414 N.Y.S.2d 537 (N.Y.App. Div.1979).

■ In an attempt to raise a genuine issue of material fact as to whether ASHA knew and approved of Blomfield's withdrawal, ASHA first argues that it has no record of Blomfield's withdrawal in its files at this time. From this, ASHA concludes that one reasonable inference is that Blomfield did not notify ASHA that he was withdrawing from the project. We find this argument to be without merit. Capps

was the deputy director of housing for ASHA at that time and he states, under oath, that Blomfield notified ASHA and ASHA approved of his withdrawal. ASHA's inability to find any record of this in its file does not create a reasonable inference that Capps is lying in his affidavit.[2]

■ ASHA next asserts that Ekness stated in his deposition that he had no knowledge that Blomfield was withdrawing from the project after he broke his leg. What Ekness stated at his deposition was that it was Dudley who was in Bethel at the time Blomfield broke his leg. Ekness further stated that he personally had believed Blomfield was no longer involved with the work on the contract as of March 1972, when Blomfield submitted the last of his follow-up reports. This is still prior to the time of Dudley's and Ekness's alleged negligence or breach of contract with ASHA. We do not believe that this minor discrepancy as to whether Ekness believed Blomfield left the association four months or only one month before the alleged negligence or breach of contract creates any genuine issue of material fact precluding summary judgment in this case.

■ ASHA also relies upon the fact that *Ekness* did not inform ASHA that Blomfield was withdrawing from the project. We fail to see the meaningfulness of this. ASHA was informed that Blomfield was withdrawing, either by Dudley or Blomfield. There is nothing in the law that requires Ekness to be the one to inform ASHA.

■ ASHA's last argument on this issue is that because Dudley and Ekness continued to use Blomfield's name on various documents, ASHA could have reasonably believed that Blomfield was still working with Dudley and Ekness on the project. We disagree. The mere continuation of the use of Blomfield's name does not contradict Capps' sworn statement that ASHA had been informed that Blomfield was with-

**2.** ASHA attempts to establish that Capp's affidavit is unreliable or insufficient in various respects. We have reviewed ASHA's arguments and find them to be without merit or, more frequently, irrelevant.

drawing from the project. Furthermore, ASHA's argument is inconsistent with the many statements in the record that ASHA knew Blomfield was not involved at all on the road portion of the contract, which is all that was left to be done after March 1972. In view of this knowledge, ASHA could hardly rely upon Blomfield's name on several documents to indicate that Blomfield was still involved in the project. Therefore, even if a joint venture existed between Dudley, Ekness and Blomfield, Blomfield properly withdrew from the venture before Dudley and Ekness allegedly breached their contract with ASHA or acted negligently.

### 2. Joint Venture by Estoppel

■ ASHA argues alternatively that there exists a genuine issue of material fact as to whether Blomfield was a joint venturer by estoppel with Dudley and Ekness at the time of the alleged negligence or breach of contract. We find no merit in this contention. Blomfield and ASHA are in agreement that a person can, under certain circumstances, be estopped to deny that he has entered into a joint venture with another person. Blomfield correctly notes, however, that those circumstances do not exist in this case.

The flaw in ASHA's analysis is that it fails to recognize that reliance is a critical element of liability by estoppel. Rowley on Partnership states:

> "There may be a joint venture by estoppel as to third parties, regardless of the relationship of the parties as between themselves." There must, however, as in the case of any other claim of estoppel, be proof of action in reliance upon the acts constituting the alleged estoppel, with resultant injury or damage.

2 R. Rowley & D. Sive, Rowley on Partnership § 52.59, at 544 (2d ed. 1960), *quoting United States v. Westmoreland Manganese Corp.*, 134 F.Supp. 898, 925 (E.D.Ark.1955) (footnotes omitted).

ASHA contends that Blomfield is estopped to deny that he was a joint venturer with Dudley and Ekness because he permitted Dudley and Ekness to use his name in conjunction with theirs on various documents. ASHA states, "Blomfield's name, used repeatedly for several months, suggested to ASHA that a joint venture existed." Although ASHA attempts to contradict Blomfield's evidence that ASHA knew Blomfield was not a joint venturer with Dudley and Ekness, ASHA does not address Blomfield's observation that the law requires some type of reliance by ASHA on Blomfield's apparent participation in the joint venture.

In order to avoid summary judgment on this issue, ASHA need only have presented some evidence that it relied upon Blomfield's participation as a joint venturer in entering into its contract with Dudley and Ekness. ASHA failed to do so.

In his affidavit, Capps states that "ASHA looked to and relied upon only Chalmers Ekness and Hawley Dudley, not Mr. Blomfield, for performance of the contract." ASHA simply never introduced any evidence that contradicted or tended to contradict this statement. In the absence of any evidence that ASHA was relying upon Blomfield's participation in the joint venture, there is no genuine issue of material fact precluding the conclusion that Blomfield is not estopped from denying that he was a joint venturer with Dudley and Ekness.

We further note that ASHA's evidence "contradicting" Blomfield's evidence that ASHA knew he was not a joint venturer was not sufficient to preclude summary judgment in Blomfield's favor. ASHA presented no evidence that any of its officers or employees affirmatively believed that Blomfield was a joint venturer with Dudley and Ekness on the contract. We thus hold, on both of these bases, that ASHA's argument of estoppel is without merit.

### III. CONCLUSION

We conclude that ASHA failed to establish any material issue of fact that would preclude finding as a matter of law that Blomfield withdrew from his association

with Dudley and Ekness before their alleged negligence or breach of contract occurred. Furthermore, ASHA failed to establish any material issue of fact that would preclude finding as a matter of law that Blomfield could not be liable as a joint venturer by estoppel for the alleged negligence or breach of contract by Dudley and Ekness. On the evidence presented to the superior court by the parties, it was proper for the superior court to grant summary judgment for Blomfield.

The judgment of the superior court is AFFIRMED.